# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| TAKESHI OGAWA,<br><br>                             **Petitioner,**<br>v.<br><br>KYONG SUN KANG,<br><br>                             **Respondent.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:18CV335DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Petitioner Takeshi Ogawa's Verified Complaint and Petition for Return of Children pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001 through 9011. The court held an initial hearing on the Petition on May 7, 2018. At that hearing, Ogawa was represented by John Robinson and Andrew Deiss and Kang was represented by Cory Wall. The parties filed supplemental briefing after that hearing, and the court held a supplemental evidentiary hearing to hear testimony from the parties' Japanese law experts on May 17, 2018. At the supplemental evidentiary hearing, Ogawa was represented by John Robinson and Wesley Felix, and Kang was represented by Cory Wall. At the hearing, Wall requested the opportunity to file an additional brief regarding a new case relied upon by Ogawa. The court granted the request and gave Kang until May 22, 2018 to file the brief. In addition, on May 18, 2018, the court interviewed Ogawa and Kang's two

children, who are at the center of the custody dispute, in chambers with no parents or attorneys present. The interview was on the record and Mai Sanchez acted as interpreter. With the submission of Kang's final brief on May 22, 2018, the court considers the matter fully briefed and under advisement. After carefully reviewing and considering the Petition, all the briefing and materials submitted in response to the Petition, the testimony of the legal experts, and the arguments made by counsel, along with the relevant authorities on the legal issues presented, the court issues the following Memorandum Decision and Order.

## BACKGROUND

### A. GENERAL FACTUAL BACKGROUND

Ogawa and Kang were married and lived together in Otaru City, Hokkaido, Japan. Ogawa is a Japanese national, and Kang is a South Korean national. Ogawa and Kang are the parents of twelve-year-old twins, N.O and N.O. The family lived together, mostly in Japan, until 2012. In April 2012, Kang and the twins relocated to the United States while Ogawa remained in Japan. The parties were intending to divorce at that time.

In March 2013, Ogawa and Kang finalized their divorce by mutual agreement. Pursuant to the agreement, Kang returned the children to Japan and Ogawa's custody. Although the agreement states that Ogawa was to hand over the children to Kang on March 31, 2017, Ogawa kept the children living with him in Japan. Kang states that she made efforts with authorities in Japan to have the "hand-over" provision of the divorce agreement enforced but she received no help and was unable to have the children turned over to her. The divorce agreement also states

that commencing in April 2017, Ogawa will pay 30,000 yen for each child each month to an account designated by Kang. However, Kang alleges that Ogawa has paid nothing.

In October 2017, the twins traveled from Japan to South Korea to celebrate a traditional Korean festival with their maternal grandparents. Ogawa intended to travel to South Korea after the festival to pick up the twins and return with them to Japan. However, Kang was in South Korea during the time of the festival and took the children back to the United States with her. Kang sent a text to Ogawa with a picture of the children and a message that the children were doing well in the United States. Kang also stated that the children were afraid to call Ogawa because they were afraid that he would come pick them up and take then to Japan, and that they would call him when they were comfortable.

Ogawa responded to the text message with several objections. However, Kang did not respond. After several weeks, on October 23, 2017, Kang responded that the twins were very happy and doing well. She also stated that Ogawa "would have never cooperated and allowed the kids to come to the USA. I'm sorry, this is the only way I could have got them." Kang also requested that Ogawa send various personal items of the twins to her address in Utah and provided him a new telephone number he could use to contact the twins.

Ogawa retained counsel in Japan and filed an application for assistance under the Hague Convention with the Japanese Central Authority on November 15, 2017. The next month, the Japanese Central Authority forwarded the application to the Untied States Department of State. On December 15, 2017, the U.S. Department of State sent a letter to Kang. Kang responded to

the letter stating that she would not return the children to Japan. She believes it is her right under the divorce agreement to have physical custody of the twins after the "hand over" date of March 31, 2017.

## ANALYSIS

Ogawa filed the present action pursuant to the Hague Convention, which has been implemented in the United States by the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001-9010. The Hague Convention was adopted to protect children from the adverse effects of being wrongfully removed to or retained in a foreign country and to establish procedures for their return. *See Ohlander v. Larson*, 114 F.3d 1531, 1534 (10th Cir. 1997) (citing the Hague Convention on the Civil Aspects of International Child Abduction, Dec. 23, 1981, Preamble, 51 Fed. Reg. 10494, 10,498 (1986)). "The Convention is meant to provide for a child's prompt return once it has been established the child has been 'wrongfully removed' to or retained in any affiliated state." *Id*. (quoting Convention, art. 1). The court's role is not to make traditional custody decisions but to determine in what jurisdiction the children should be physically located so that the proper jurisdiction can make those custody decisions. *Loos v. Manuel*, 651 A.2d 1077 (N.J. Super. Ct. Ch. Div. 1994); *see also Friedrich v. Friedrich*, 78 F.3d 1060, 1063 (6th Cir. 1996).

The first question the court must address is whether Kang "wrongfully removed" the children in violation of Ogawa's right of custody. Once a petitioner establishes that removal was wrongful, the child must be returned unless an exception is applicable. *Abbott v. Abbott* 130 S.

Ct. 1983, 1990 (2010) (citing 42 U.S.C. § § 11603(a)); *Blondin v. Dubois*, 189 F.3d 240, 245 (2nd Cir. 1999); *see also* 42 U.S.C. § 11601(a)(4) ("Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies."). Moreover, "[e]ven where the grounds for one of these "narrow" exceptions have been established, the district court is not necessarily bound to allow the child to remain with the abducting parent." *Blondin*, 189 F.3d at 246 n.4 (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1067) (6th Cir. 1996) ("[A] federal district court retains, and should use when appropriate, the discretion to return a child, despite the existence of a defense, if return would further the aims of the Convention.")).

Petitioner bears the burden of showing by a preponderance of the evidence that the removal or retention was wrongful. Accordingly, Petitioner must demonstrate that:

(A) the child was habitually resident in a given state at the time of the removal or retention;

(B) the removal or retention was in breach of petitioner's custody rights under the laws of that state; and

(C) petitioner was exercising those rights at the time of removal or retention.

*Chafin v. Chafin*, 133 S. Ct 1017, 1021 (2013) (*quoting* Hague Conv., art. 3).

Here, the court finds that Petitioner has failed to meet his burden of showing by a preponderance of the evidence that the removal of the twins was in breach of Ogawa's custody rights under the parties' divorce agreement. Both parties ask the court to interpret the divorce agreement in their favor. The court concludes that the only clear reading of the agreement is that

Ogawa gained physical custody of the children until March 31, 2017, at which time he would deliver the children to Kang and begin paying monthly child support.  There is no provision in the Agreement stating that Kang would return the children to Ogawa after she was given physical custody of the children on March 31, 2017.  In addition, the agreement provided that Ogawa would pay monthly child support to Kang until the children were twenty years old.  This provision clearly demonstrates that the parties intended that Kang would have the primary physical custody of the children from March 31, 2017, forward.

Moreover, at the time that Ogawa delivered the children to Kang on March 31, 2017, Kang would have both parental authority and physical custody of the children.  At that time, therefore, Kang would have full parental authority under Japanese law with the right to all decision-making authority for the children.  This decision-making authority would include decision-making authority regarding custody.

Ogawa argues that it is clear that he retained the right to determine custody for the children because the agreement states that he retains the right of custody after the children were delivered to Kang.  However, the term right of custody in that context can only be interpreted to mean that he retained a right of exercising some physical custody, at undetermined future dates after March 31, 2017.  The child support provisions of the agreement demonstrate that the parties contemplated that Ogawa would have some limited physical custody of the children after March 31, 2017, but not enough that it would change his monthly child support obligation.  Despite his construction of the agreement, there is no provision in the agreement that grants Ogawa the right to determine physical custody of the children and no provision granting his physical custody of

the children after March 31, 2017.

The parties rely on various Hague Convention cases supporting their respective positions. The most relevant cases deal with the extent to which the court can interpret the parties agreement and Japanese law regarding custody issues. While the court agrees that it cannot determine custody issues, it recognizes that it must review the divorce agreement in this case enough to determine whether the removal of the children was wrongful or in violation of Ogawa's rights of custody. The court notes that both parties have asked the court to apply the terms of the divorce agreement. The terms of that agreement clearly provide that Ogawa was to deliver the children to Kang on March 31, 2017. Neither expert on Japanese law took issue with that provision or claimed that the agreement was ambiguous. Having considered the applicable provisions of the Hague Convention, the administrative guidance regarding those provisions, the cases and law cited by the parties, and the applicable divorce agreement in this case, the court concludes that Ogawa has failed to demonstrate that Kang's removal of the children to the United States was in violation of Ogawa's rights of custody and, therefore, wrongful. Accordingly, Ogawa has failed to establish a prima facie case under the Hague Convention.

Because Ogawa has failed to establish a prima facie case under the Hague Convention, the court need not address the available defenses available under the Hague Convention. However, in the event that the court found a prima facie case under the Hague Convention, Kang relied on the age and maturity exception, which the court will also address as an alternative basis for allowing the children to remain in the united States with their mother. The Hague Convention provides that "[t]he judicial or administrative authority [considering a petition] may

also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of [the child's] views." Hague Convention, art. 13. The age and maturity exception is to be narrowly construed and must be shown by a preponderance of the evidence. *England v. England*, 234 F.3d 268, 272 (5th Cir.2000) (citing §§ 11601(a)(4), 11603(e)(2)(A)).

In applying the "age and maturity" exception, a court must not focus solely on the general goal of the Convention–to protect children from the harmful effects of wrongful removal–but must also carefully determine that the particular child "'has obtained an age and degree of maturity at which it is appropriate to take account of [the child's] views.'" *Blondin v. Dubois*, 189 F.3d 240, 247 (2d Cir. 1999) (*quoting* Hague Convention, art. 13). The Convention contains no age limit for applying the exception. *Blondin II*, 238 F.3d 153, 167 (2d Cir. 2001) (taking into consideration views of eight-year-old child); *Raijmakers-Eghaghe v. Haro*, 131 F. Supp. 2d 953, 957 (E. D. Mich. 2001).

In this case, the twins are twelve years old. The court had the opportunity to observe the demeanor and maturity of both children during the court's *in camera* interview of each of them. Undoubtedly the task of meeting alone with a federal judge and his staff on the record, with no parents or attorneys present and in a language they are in the process of learning, was a daunting one. But both girls answered the court's questions and behaved respectfully. They both expressed a desire to remain in Utah with their mother, with whom they feel more comfortable. One daughter stated quite clearly, "Of course, mother." Both girls expressed a dislike that their father gets irritated with them. One stated that she cannot talk to or confide in her father like she

can her mother. The other stated that she does not have as good of a relationship with her father as her friends have with theirs. They also confirmed that they enjoy going to school here, they are learning English, and they have made friends. The responses from both girls appeared to be genuine and not rehearsed or coerced in any way. Accordingly, even if the court had found that Ogawa had demonstrated a prima facie case, the court finds, by a preponderance of the evidence, that the girls are of an appropriate age and maturity such that it is appropriate for the court to take into account their desire to stay in Utah with their mother and not to return to Japan to live with their father.

The court's decision in this case is not based in any way on a belief that the courts of Utah or the United States would do a better job than the courts of Japan in addressing this controversy. To the contrary, the court is certain that the courts of Japan would be fully capable of handling this litigation and would appropriately apply the law and provisions of the agreement. However, Ogawa entered an agreement that clearly turns over physical custody of the twins to Kang as of March 31, 2017, her physical custody of the children is not wrongful, and the twins are of an age and a maturity to determine where they desire to live. Therefore, the court concludes that there is no basis for returning the children to Japan under the Hague Convention. This decision does not mean that Ogawa should not be able to exercise some rights of physical custody in the future, as provided for in the agreement. It merely establishes that Kang's physical custody of the children was and is not wrongful. Accordingly, the court denies Ogawa's petition for the return of the children under the Hague Convention.

## CONCLUSION

Based on the above reasoning, the court concludes that the Petition for Return of Children to Ogawa pursuant to the Hague Convention and the ICARA is DENIED. The court will enter Judgment in this matter in favor of Kang and close the case.

DATED this 24th day of May, 2018.

BY THE COURT:

*[signature: Dale A. Kimball]*
DALE A. KIMBALL
United States District Judge